UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA
          Plaintiff-Respondent.

                              CIVIL   CASE No.

vs.                           CRIMINAL CASE No.   00-131 (CCC)

ESTEBAN RIVERA-LEBRON
          Defendant-Petitioner.

_____/

**PETITIONER ESTEBAN RIVERA-LEBRON'S PETITION FOR WRIT OF AUDITA QUERELA, WRIT OF ERROR, PURSUANT TO TITLE 28 UNITED STATES CODE § 1651 AND PURSUANT TO THE UNITED STATES SUPREME COURT'S DECISION IN UNITED STATES v. MORGAN, 364 U.S.507, S.CT. 247 (1954).**

          COMES NOW, the Defendant-Petitioner ESTEBAN RIVERA-LEBRON

("Mr. Rivera-Lebron" or "Petitioner"), in the above entitled

numbered cause who files this, his Petition for Writ of Audita

Querela, Writ of Error, pursuant to Title 28 U.S.C. § 1651 and

pursuant to the Supreme Court's decision in United States v.

Morgan, 364 U.S. 507, 74 S.Ct. 247 (1954), and in support

thereof, Mr. Rivera-Lebron brings before this Honorable Court the

following Constitutional grounds and errors committed in his

criminal case which requires correction by this Court and which

are the basis of this Writ of Audita Querela or Writ of Error,

pursuant 28 U.S.C. § 1651.

          In United States v. Morgan, the United States Supreme

Court held that "a District Court has power to grant" a motion

in the nature of writ of error coram nobis. Id. at 511. The Court

emphasized that the "[c]ontinuation of litigation after final

judgment and exaustion of waiver of any statutory right of review
should be allowed through this extraordinary remedy only under
circumstances compelling such action to achieve justice." Where
there are "sound reasons existing for failure to seek appropiate
earlier relief, this motion in the nature of the extraordinary
writ of coram nobis must be heard by the federal trial court."
Id. at 512. "Otherwise a wrong may stand uncorrected that the
remedy would  right. Id.

## PROCEDURAL HISTORY

On September 27, 2000, a Federal Grand Jury sitting in the
District of Puerto Rico returned a three (3) Count Superseding
Indictment against Mr. Rivera-Lebron and three co-defendants,
Criminal Case No. 00-131 (CCC).   Mr. Rivera-Lebron was charged
only in Count One. Count One charged that from in or about  April
2000, up to and including May 20, 2000, the Petitioner and others
did conspire with each other, and others to the Grand Jury known
and unknown, to possess with intent to distribute in excess of
one kilogram of heroin in violation of 21 U.S.C. § 846.

On October 05, 2000 the Petitioner entered a plea of not
guilty as to Count One of the Superseding Indictment.

Mr. Rivera-Lebron  entered  a guilty plea on the charges
of Count One on  before the Honorable Carmen Consuelo Cerezo.
On January 23, 2001, Mr. Rivera-Lebron, along eleven (11) co-
defendants were the subject of a Three Count Superseding
Indictment from the District of Puerto Rico, Criminal Case No.
00-00917(JAG) charging Mr. Rivera-Lebron and his co-defendants in
Count One with a conspiracy to possess with intent to distribute

2

in excess of one hundred and fifty (150) kilograms of cocaine, and one (1) kilogram of heroin, all in violation of 21 U.S.C. § 846. Count two charged the Petitioner and his co-defendants with a conspiracy to import into the United States  approximately one and one hundred and fifty (150) kilograms of cocaine, all in violation of 21 U.S.C. § 963. Count II, charged  the Petitioner with a conspiracy to commit offenses against the United States, in violation of 18 U.S.C. §§1956 and 1957, all in violation of 18 U.S.C. § 1956 (h).

On February 22, 2001 Mr. Rivera-Lebron's arraignment was held in which he entered a no guilty plea as to the three counts of the Indictment.

On May 17, 2001, Mr. Rivera-Lebron submitted a motion for change of plea in Criminal Case No. 00-917(JAG). The district court denied Petitioner's motion to consolidate the cases but granted the motion for change of plea in Criminal No. 00-131(CCC). On June 21, 2001, an Order was rendered by the district court setting the change of plea hearing before a magistrate-judge in Criminal Case No.00-131(CCC).

On June 29, 2001, the Magistrate Report and Recommendation was rendered and the magistrate-judge recommended that Mr. Rivera-Lebron's plea of guilty be accepted as to Count One of the Superseding Indictment on Criminal Case No. 00-131. In an Order, the district court approved the Magistrate's Report and Recommendation and accepted Mr. Rivera-Lebron's plea of guilty.

A Presentence Report was ordered and Mr. Rivera-Lebron was attributed with an offense involving at least three (3), but less than ten (10) kilograms of heroin which was not the offense charged on his indictment that under offense guideline § 2D1.1 have a base offense level of thirty four (34). Mr. Rivera-Lebron's base offense level was increased three (3) levels to a total base offense level of 37. The offense level was subsequently reduced three (3) levels for his acceptance of responsability , bringing the total base offense level to 34.

A Criminal History Category of V was determined. However, Mr. Rivera-Lebron was deemed a career offender and his Criminal History Category was increased to VI.

Mr. Rivera-Lebron submitted an objection to the Presentence Investigative Report (PSI). The Government filed a response in opposition to the Petitioner's objections to the (PSI).

On June 06, 2002, Mr. Rivera-Lebron submitted a motion for change of plea in Criminal Case 00-917 (JAG).

On May 7, 2002, the district court issued an Order granting in part and denying in part Petitioner's objections to the PSI in Criminal Case No. 00-131(CCC). On June 03, 2002, an Order was rendered by the district court amending the Order of May 07, 2002.

On July 03, 2002 the Petitioner entered a guilty plea in Criminal Case No. 00-917-(JAG), on Count One of the Superseding Indictment.

4

On July 12, 2002 Mr. Rivera-Lebron was sentenced by the Honorable Carmen Consuelo Cerezo  pursuant to the then mandatory Federal Sentencing Guidelines to a term of imprisonment of 262 months  the minimum established in offense guideline § 2D1.1 for a base offense level of 34 with a Criminal Category of VI, and five (5) years  of supervised release term as to Count One of the superseding indictment.

On December 10, 2002, Mr. Rivera-Lebron's Sentencing Hearing was called on Criminal Case No. 00-917 (JAG). Petitioner was sentenced by the Honorable Jay A. Garcia under the then mandatory Federal Sentencing Guidelines to a term of imprisonment of 270 months as to Count One, to be served concurrently with the term of imprisonment imposed in Criminal Case No. 00-131 (CCC). The court also imposed a five (5) year term of supervised release term as to Count One, to be served concurrently with the term imposed in Criminal Case No. 00-131 (CCC).

Mr. Rivera-Lebron filed an appeal on both cases with the First Circuit Court of Appeal. Upon motion by the Petitioner, the Appeals Court ordered the consolidation of both of the appeals, Case No. 02-2051 and 03-1085 on February 12, 2003.

In his conbined appeals Mr. Rivera-Lebron presented two issues:

1- Whether the district court erred in not holding an Evidentiary Hearing to determine the quantity of drugs attributable to the Defendant.

2- Whether in cases No.00-131 and 00-917, the district court erred in not first determining whether the defendant's

prior offenses as predicate offenses under the career offender guideline. The First Circuit Court of Appeals affirmed both convictions and sentences.

On August 25, 2004, Mr. Rivera-Lebron filed a motion pursuant to 28 U.S.C. § 2255, Civil Case No. 3:04-CV-01881(CCC), in which he claimed that at the time of his sentencing on both cases he was legally incompetent due to the murder of his daughter by his stepfather and whether the district court erred in failing to hold a competency hearing prior to the imposition of sentence, even though, the court had evidence which raised a bona fide doubt as to Mr. Rivera-Lebron's competency.

The Petitioner additionally claimed that the court had erroneously sentence him by attributing amounts of drugs that were neither charged or admitted by him on the preponderance of the evidence, and that his sentence was in violation of the Supreme Court's decision in Blakely v. Washington, 542 U.S. 296 (2004).The district court held that Blakely was not retroactive.

The district court denied Mr. Rivera-Lebron's motion pursuant to § 2255. Mr. Rivera-Lebron filed a petition for a Certificate of Appealability or ("COA"). The district court granted the ("COA") only as to his competence arguments on sentencing. The court denied the claim of competence at the time of the plea.

The Appeals Court denied Mr. Rivera-Lebron's grounds presented in the Certificate of Appealability.

Mr. Rivera-Lebron respectfully files this Writ of Audita Querela or Writ of Error, pursuant to 28 U.S.C. § 1651 and

pursuant to the Supreme Court's decision In <u>United States v.</u> <u>Morgan</u>, 364 U.S. 507, 74 S.Ct. 247 (1954), which holding grants this Court the power to correct an error which at the present is of a Constitutional magnitud.

Mr.Rivera Lebron's sentence must be corrected in light of the Supreme Court's decision in <u>United States v. Booker</u>, 543 U.S. 220 (2005) holding the Federal Sentencing Guidelines unconstitutional under the Sixth Amendment in that they allowed a court to make factual findings by the preponderance of the evidence test in violation of constitutional principles, which require that any facts which increase the sentence beyond the maximum must be found by a jury using the beyond a reasonable doubt standard. To resolve the Sixth Amendment issue, the Supreme Court struck down a portion of the statute enacting guidelines and determined them to be advisory. As the Court held in <u>Booker</u>, if the guidelines are considered mandatory, they are unconstitutional. Therefore, the sentence that this Court gave the Petitioner is unconstitutional and this error must be corrected by way of a Writ of Error, Audita Querela, pursuant to 28 U.S.C. § 1651 as held by the United States Supreme Court in <u>United States v. Morgan</u>, 364 U.S. 507, 74 S.Ct. 247, 98 L.Ed. 248 (1954). See <u>Kessack v. United States</u>, 2006 U.S. Dist. LEXIS 80734 (W.D.Was. Decided January 18, 2008), appended to this instant motion.

## I.  JURISDICTION

This Court has subject matter jurisdiction and personal jurisdiction and parties pursuant to 28 U.S.C. § 1651 (a)(b), and

18 U.S.C. § 3231.

The law is clear as to the Trial Court's jurisdiction to act on an otherwise final judgment by Writ of Error and the authority to recognize common law post conviction remedies governed by the Supreme Court's decision in Morgan.

The Supreme Court held in Keison v. Henry, 211 U.S. 146 at 148 (1908) that:

> "Where a Court has jurisdiction, mere error commited in the course of the proceeding cannot be corrected upon a Writ of Habeas Corpus, which may not in this matter, usurp the function of a Writ of Error."...Like all other errors of law committed in the course of the proceeding they must be corrected by Writ of Error." Id. at 211 U.S. 149.
>
> See also    United States v. Addonizzio, 442 U.S. 178, 60 L.Ed. 805 (1979); United States v. Frady, 456 U.S. 152 (1982).

An Audita Querela or Writ of Error is the proper motion to file in order to correct an error.

## II.  THE AVAILABILITY OF THE WRIT OF AUDITA QUERELA

A Writ of Audita Querela or Writ of Error, pursuant to 28 U.S.C. § 1651 is filed in order to correct an error that resulted in the application of a law that was constitutional at the time of Petitioner's conviction and sentence but was later declared to be unconstitutional by the Supreme Court. A petition for a Writ of Error under these circumstances may not be considered a second or successive motion under 28 U.S.C. § 2255 in order to invoke the non-retroactivity of Booker on collateral review or citing cases like Varela v. United States, 400 F. 3d. 864 (11th. Cir. 2005); Guzman v. United States, 404 F.3d. 864 (2nd Cir. 2005);

8

United States v. Price, 400 F. 3d.84 (10th Cir.2005) and others.

Mr. Rivera-Lebron's Writ of Audita Querela or Writ of Error have nothing in common or have anything to do with collaterally attacking his sentence pursuant to § 2255, because at the time when Rivera-Lebron was convicted and sentenced " the judgment was correct when it was rendered, but that later become incorrect because of circumstances that arose after the judgment was issued", meaning the ruling in Booker declaring unconstitutional the Federal Sentencing Guidelines. See United States v. Kessack Opinion appended herein.

Mr. Rivera-Lebron's petition is distinguished from the decisions of Varela, Guzman or Price, in that the defendants there filed a motion under 28 U.S.C. § 2255 alleging a Booker violation and the Eleventh, Second and Ten Circuit, as well as other circuits have held that Booker is a new law and is not retroactively applicable on collateral review. See also United States v. Cruz, 423 F.3d. 1119 (9th Cir. 2005)(per curiam); United States v. Bellamy, 411 F.3d. 1182 (10th Cir. 2005), all of them citing Teague, 489 U.S. at 310.

Booker is not retroactvely applicable on collateral review under 28 U.S.C. §2254, § 2255 but Booker does apply under the Writ of Error or Writ of Audita Querela pursuant to 28 U.S.C. § 1651.

Mr. Rivera-Lebron's Petition For Writ Of Error is also distinguishable from the decision of the Ten Circuit in United States v. Torres, 282 F. 3d. 1241 (10th Cir. 2002). In Torres, the defendant tried to raise a similar argument that the Court

9

had previously rejected in his first and timely § 2255 motion in that his indictment did not charged him with the amount of drugs for which he had been sentenced. See <u>United States v. Torres</u>, 82 F.3d. 427 (1996). <u>Torres</u>, then filed a Writ of Audita Querela or Writ of Error, pursuant to 28 U.S.C. § 1651, citing the Supreme Court's decision in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000) and its progeny, <u>Castillo v. United States</u>, 530 U.S. 120, 120 S.Ct. 2090, 147 L.Ed. 94 (2000); <u>Jones v. United States</u>, 526 U.S. 227 (1999), and asked the Court to overrule their previous holding and apply retroactively these decisions to his case. The Court held that <u>Apprendi</u> was not retroactively applicable to a successive §2255 petition citing <u>Browning v. United States</u>, 241 F.3d. 1262, 1265 (10th Cir. 2001)(en banc).

Another case distinguishable from the instant case was the decision of the Nine Circuit Court of Appeals in <u>United States v. Valdez-Pacheco</u>, 237 F.3d. 1077, 1079 (9th Cir. 2001), in that the Court in <u>Valdez-Pacheco</u> ruled that the Writ of Audita Querela was not available to a prisoner to avoid the provisions of the Anti-terrorism and Effective Death Penalty Act of 1996 or (AEDPA), because the defendant in <u>Valdez-Pacheco</u>, <u>supra</u>, sought a Writ of Audita Querela based on three claims that could have been raised, or were raised on direct appeal, or in earlier post conviction attacks. The basis for each attack existed factually and legally, prior to, or at the time, the defendant was sentenced. Because the remedies were known and existed at the time of the prior attack, the court viewed <u>Valdez-Pacheco</u> petition as a method of circumventing (AEDPA).

In the instant case, Mr. Rivera-Lebron was precluded from raising what are now called Booker issues, meaning the unconstitutionality of the Sentencing Guidelines.

At the time of his sentencing in 2002, because of Supreme Court decisions that appeared to render challenges to the validity of the guidelines useless. See McMillan v. Pennsylvania, 477 U.S. 79 (1986) and Mistretta v. United States, 488 U.S. 361 (1989). McMillan held contrary to the court's decision in Booker, that sentencing factors, unlike elements of crime, did not need proven to a jury beyond a reasonable doubt or admitted by a defendant. These cases, along with numerous opinions thereafter, conbined to firmly entrench the concept that the guidelines were constitutional and immune from Fifth and Sixth Amendment attacks.

Even though, at the time of Mr. Rivera-Lebron's sentence the United States Supreme Court had  pronounced their holdings in Jones v. United States, 526 U.S. 227 (1999) and Apprendi v. New Jersey, 530 U.S. 466 (2000) requiring that "any fact other than a prior conviction that increases a penalty for a crime beyond the statutory maximum must be charged on the indictment, submitted and proven by a jury or admitted by the defendant". The defendant was not able to obtain relief under these cases because at the time, courts all over the Nation, were under the assumption that Apprendi did not constrained them from making additional findings of  facts, elements or aggravating conduct until  the ruling of the United States Supreme Court in Blakely v. Washington, 542 U.S. 266 (2004), clarifying that the "statutory maximum" referred in Apprendi was the statutory maximum prescribed by the

11

Sentencing Guidelines and forbidding judges from making additional findings of elements or facts that increased a defendant's sentence under the then binding Federal Sentencing Guidelines, but after the ruling in Booker, declaring the Federal Sentencing Guidelines unconstitutional allows the Petitioner to obtain the correction of his sentence under these unconstitutional guidelines under a Writ of Error or Writ of Audita Querela, pursuant to 28 U.S.C. § 1651.

It is under these circumstances that the Writ of Audita Querela should be available to fill the gap of federal postconviction remedies as held in Morgan and still binding under present case law. An Audita Querela filed under these circumstances does not circunvents the directives of (AEDPA), because it is not a § 2255 motion and is available to "fill interstices of the federal post-conviction remedial framework." The Writ fills gaps in the current system of postconviction relief and survives in the federal criminal context, See United States v. Morgan, 74. S.Ct. 247 1954, see also, Doe v. INS, 120 F.3d. 200 (9th Cir. 1997) and 28 U.S.C. § 1651(a).

In Valdez-Pacheco, the Court held that the Writ of Audita Querela was not available to a prisoner to avoid the provisions of (AEDPA), codified in part at 28 U.S.C. § 2255 and § 2254, a prisoner may not circumvent valid congressional rotation on collateral attacks by asserting that those very limitations create a gap in the post conviction remedies that must be filled by the common law writs. Id. citing United States v. Kimberlin, 675 F.2d. 866 (7th Cir. 1982). See also United States v. Holt,

12

417 F.3d. 1172 (11th Cir.2005). The Court in Holt held that the authority of federal courts to recognize common law post-conviction remedies pursuant to the All Writs Act, 28 U.S.C. § 1651, is governed by the Supreme Court's decision in Morgan, which held that a federal prisoner may attack his conviction even when he is not in custody using the common law writ of coram novis. See 346 U.S. 510-11,74 S.Ct. at 252. See also Obado v. New Jersey, 328 F.3d. 716 (3rd Cir.2002). ("The unavailability of habeas corpus relief does not leave deserving petitioners entirely without recourse because they may bring claims via Writ of error") Id. at 718. citing Sinclair v. Louisiana, 679 F.2d.513,514 (5th Cir.1982).

Congress and the Federal Judiciary have allowed the Writ of Error Audita Querela, 28 U.S.C. § 1651 to survive and remain viable in Federal Criminal Law, as a last means by which a defendant may seek some measure of justice or mercy, when he is denied any other means of relief.

Petitioner's motion to obtain relief on an 8 year old conviction is not unreasonable and does not preclude grant of Writ of Error or Audita Querela in the case of United States v. Salgado, (EDW) 692 F.Supp.1265, and the writ is available in a Federal criminal case to obtain relief against the consequences of a prior judgment, and where refusal to grant such relief would strip the petitioner of access to newly created rights to which he or she would otherwise be entitled to by operation of the law. United States v. Holder, 741 F. Supp. 27 (DC Puerto Rico). Morgan, supra, recognized the availability of the writ, even

13

after exaustion or waiver of all remedies. "Continuation of litigation after final judgment and exaustion of waiver or any statutory right of review, should be allowed through this extraordinary remedy, under circumstances compelling such action to achieve justice. Id. at 252. This Court is vested with the judicial power to fashion the Petitioner's motion with a remedy where there is an invasion of a protected right. Bell v. Wood, 327 U.S. 684 90 L.Ed. 944, 19 ALR 382.

Petitioner is raising, as matter of law and objection against the consequences of a prior judgment rendered by this Court 1n 2000 and is claiming a newly recognized defense against the infirmities created by said judgment, which was correct when rendered but now is infirmed by matters of law arising after the judgment's rendition. Therefore, relief is proper by Writ of Error. Kelso v. Henry, 211 U.S. 146, 148-149 (1908), and this Court has proper jurisdiction conferred by Morgan.

Mr. Rivera-Lebron, is filing this petition, requesting that this Court sentence him to a term of confinement consistent with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), holding that the Federal Sentencing Guidelines were unconstitutional under the Sixth Amendment, in that they allowed a court to make factual findings by the preponderance of the evidence test in violation of constitutional principles, which require that any facts which increase the sentence beyond the maximum must be found by the jury using the beyond the reasonable doubt standard.

14

Booker has made it clear that Petitioner's sentence was unconstitutional, yet traditional post-conviction relief is not available at this time. This Court and this Circuit prior interpretations of Teague v. Lane, 489 U.S. 288 (1989), blocks traditional relief in §2255 motions, but unlike Valdez-Pacheco, Petitioner is now serving a sentence that we all know to be unconstitutional. The only remedy for Petitioner to challenge the unconstitutional sentence that he received over 8 years ago is through a Writ of Error or Writ of Audita Querela.

### III. SHOULD PETITIONER'S PETITION FOR WRIT OF AUDITA QUERELA BE CHARACTERIZED AS A §2255 MOTION, AND THUS SUCCESSIVE

Petitioner's request for Audita Querela raises a substantive claim under that cause of action, and no basis exist for construing it as a successive §2255 motion.

As discussed above, at the time of Rivera-Lebron's direct appeal,or at the time of his §2255 motion, no basis existed to challenge the constitutionality of the Federal Sentencing Guidelines.

The relief requested by Mr. Rivera-Lebron, pursuant to his Writ of Audita Querela is part of the original criminal action, and should not be characterized as a civil action by the District Court. Indeed in Morgan supra, the Supreme Court took great pains to distinguish a §2255 motion from the writ process.

> "The contention is made that §2255 of Title 28 U.S.C.,providing that a prisoner in custody may at any time move the Court which imposed a sentence to vacate it if violation of the constitutional laws of the United States, should be construed to cover the entire field of remedies in the nature of coram nobis in federal courts. We see no compelling reasons to reach that conclusion." Id at 510.

15

As noted in Morgan, the Supreme Court in United States v. Hayman, 342 U.S. 205 (1952), stated that the purpose of § 2255 was,

> "To meet practical difficulties in the administration of federal habeas corpus jurisdiction...Nowhere in the history of § 2255 do we find purpose to impinge upon prisoners'rights of collateral attack upon their convictions."

Hayman at 219.

> The Morgan court went on to state,
> We know of nothing in the legislative history that indicates a different conclusion. We do not think that the enactment of § 2255 is a bar to this motion..."

Id. at 252.

While courts may re-characterize motions, they generally do so for only two reasons, neither applicable here. First, a Court may re-characterize a motion to aid a pro se litigant. See Castro v. United States, 540 U.S. 375 (2003),(courts rename pro se motions in order to avoid unnecessary dismissal, or to avoid inappropriately stringent application of formal labeling requirements). The Court also re-label motions to create a better correspondence between the substance of a pro se motion's claim of its underlying legal basis. See Castro, supra, 540 U.S. at 381. Re-labeling Petitioner's petition as a § 2255 motion would render no aid to Petitioner, and would ignore the Supreme Court's edict in Morgan, that enactment of § 2255 did not bar Morgan's writ. Petitioner claims are valid claims he seek to caption differently to avoid dismissal. Petitioner's petition should not be characterized as a § 2255 motion and should be

16

heard on its merits, because failure to allow review of Petitioner's claims by invoking the substantial procedural barrier to Section § 2255 would "raise serious constitutional questions." As a rule of law, it is taken for granted that the court must construe a Federal statute to avoid constitutional questions where such a construction is reasonably possible. Arnet v. Kennedy, 466 U.S. 134, 161 (1974); also see Cheek v. United States , 498 U.S. 192, 203 (1991) and Johnson v. Robinson, 415 U.S. 361, 366-67 (1974). See also the decision in Kessack v. United States, 2006 U.S. Dist. LEXIS 80734 (W.D.Was. November 1,2006),appended to this instant petition in Exhibit I.

In the case at bar, the Court would violate just that principle if it were to deny the established purpose of the Writ of Error Audita Querela. That is if it were to consider Petitioner's motion as a second or successive § 2255, in essence and as a matter of law the court would have decided that the Anti-Terrorist and Effective Death Penalty Act (AEDPA) is unconstitutional, as it would deny Petitioner a judicial forum when Petitioner claims that on record, entitlement as a matter of law to a newly created right.

Serious constitutional claims under the Fifth and Sixth Amendments, jury trial rights would arise with respect to the AEDPA gate keeping provisions The Court would have concluded that by amending Section § 2255, Congress had denied Petitioner the right to have judicial review of the questions herein if no avenue of review were available for a party that claims he is factually innocent of a variant of a crime of which he was

17

convicted, as result of a previous unavailable defense, that could not have been brought in a earlier proceeding.

### III. THIS COURT SHOULD GIVE RETROACTIVE AFFECT TO BOOKER IN THE CONTEXT OF THESE PROCEEDINGS. ANY ANALYSIS OF RETROACTIVITY RELEVANT TO THE PETITION FILED BY PETITIONER SHOULD BE CONDUCTED IN A CONTEXT OF THE SPECIFIC CAUSES OF ACTION FOR RELIEF BROUGHT BY THE PETITIONER HEREIN.

This Court as well as other district and circuit court of appeals has held that Booker, does not apply retroactively to cases on collateral review. Guzman v. United States, 404 F.3d. 864 (2nd. Cir. 2005); Varela v. United States, 400 F.3d.864 (11th Cir. 2005); Mc Reynolds v. United States, 387 F.3d.479 (7th Cir. 2005): Humpress v. United States, 398 F.3d. 855 (6th Cir. 2005); United States v. Cruz, 423 F.3d. 1119 (9th Cir. 2005), but because these cases only addresses the retroactivity affect of Booker, only in the context of collateral review, it does not resolve the retroactivity question in the context of a Writ of Audita Querela, which seek to reopen the criminal case, not to collaterally attack it.

Like other retroactivity determinations in the collateral context, retroactivity analysis in these aforementioned cases where based on the framework originated in Teague v. lane, 49 U.S. 288 (1989). This analysis in turn evolved from Justice Harlan's analysis of the retroactivity question in Mackey v. United States, 401 U.S. 667; Teague,supra, 49 U.S. at 305-10. These decisions reveal that the retroactivity analysis applicable in the collateral context must differ from the analysis in the instant context. It is evident from Teague

18

and <u>Mackey</u>, that rules of retroactivity should be determined by nature of the action, rather than a particular rule sought to be applied.

> [Justice Harlan] argued that retroactivity for cases on collateral review could " be responsibly [determined] only by focusing, in the first instance, on the nature function, and scope of the adjudicatory process in which such case arise. The relevant frame reference, in other words, is not the purpose of a new rule whose benefit the [defendant] seeks, but instead the purposes for which the writ of habeas corpus is made available."

<u>Teague</u>, 489 U.S. at 306 (quoting <u>Mackey</u>, 401 U.S. at 682).

In that regard, because of the sheer breadth of issues that can be raised in the habeas context, retroactivity on collateral review must be limited given the "broad scope of constitutional issues cognizable on habeas,"

> [Justice Harlan] argued that it is "sounder, in adjudicating habeas petitions, generally to apply the law prevailing at the time a conviction became final than it is to to seek to dispose of [habeas] cases on the basis of intervening changes of constitutional interpretations."

<u>Teague</u>, 489 U.S. at 306 (quoting <u>Mackey</u>, 401 U.S. at 689).

The Teague Court adopted Justice Harlan's reasoning to conclude inter alia, that "a new rule of constitutional law generally does not apply to convictions that have become final, unless it falls under certain exceptions. See <u>United States v. Cruz</u>, 423 F. 3d. 1119 (9th Cir.2005)(per curiam; <u>United States v. Price</u>, 400 F.3d.844 (10th Cir.2005); see also <u>Varela v. United States</u>, 400 F.3d. 864 (11th Cir.2005),all of them citing <u>Teague</u>, 489 U.S. at 310.See also <u>Guzman v. U.S.</u>, 404 F.3d.139 (2nd.Cir.2005); <u>U.S. v.Bellamy</u>, 411 F.3d.1182(10th Cir.2005).

Accordingly, the reason new rules have limited retroactivity on collateral review has nothing to do with the nature of collateral review itself, rather than the nature of the new rule. For this reason, the retroactivity analysis conducted in the collateral context on these cases are not applicable here where the Petitioner brought a motion to reopen his criminal case under a writ of audita querela. Thus, this Court must conduct its own assessment of the retroactive application of Booker as relevant to these specific contexts. Such assessment compels the retroactive application of Booker here. See Kessack v. United States, appended to this instant motion.

To determine whether Booker should be retroactive in the context, the Court should follow Teague and focus "on the nature, function, and scope of the adjudicatory process[es]" in which the matters arose. These considerations, together with this Court's precedent for determining retroactivity of guideline amendments and guidance provided from reviewing examples of guideline amendments the sentencing commission made retroactive, compel the conclusion that Booker should be retroactive here.

Petitioner contends in substance, that the Writ of Audita Querela remains available because neither Apprendi v. New Jersey, 530 U.S 466 (2000), Blakely v. Washington, 542 U.S. 266 (2004) or United States v. Booker, 543 U.S. 220 (2005) are retroactively applicable. This Court must rely on United States v. Morgan, to hold that Petitioner's "exhaustion of his

statutory rights under 28 U.S.C. § 2255 does not bar him his petition for Writ of Audita Querela, therefore, this COurt must not construe it as a motion under § 2255.

Mr. Rivera-Lebron has sound reasons for failing to seek early relief under § 2255, primarly (1), that Booker announced a new rule of constitutional law in 2005, (2) truly extraordinary circumstances and equities are presented and (3) re-sentencing the Petitioner under the now-advisory Federal Sentencing Guidelines is necessaryto achieve fundamental justice. See Kessack v. United States, appended to this motion.

Petitioner was also convicted and sentenced prior the decision in Blakely v. Washington, which was the first Supreme Court case to suggest that the Federal Sentencing Guidelines might violate the Sixth Amendment right to a jury trial by allowing judges to find facts supporting increases in the offense level without a jury finding. Moreover no case had suggested prior to Booker the type of remedy that was ultimately imposed by Booker: a holding that the guidelines would remain valid, but that the portions of the guidelines making them mandatory would be severed and they would continue as an advisory type only. The Supreme Court's opinion in Booker created an entirely new category of cases wherein the Court could invalidate some parts of the statute and add others.

While the law was well settled when the Petitioner was convicted and sentenced, the law has completly changed and represents a newly existing legal defense because had not the mandatory guidelines were in effect at the time, it is probable

21

that the Petitioner would had received a different, shorter sentence absent the error. United States v. Kiegue, 318 F.3d.437 (2nd. Cir.2003), finding error affecting the defendant's substantial rights where the district court erroneously used an expired version of the guidelines to determine the sentencing range.

This case is anagolous to Kiegue. While in Kiegue, the court used an outdated version of the guidelines; in this case the court used what has become an invalid version of the guidelines, specifically a version of the guidelines which dictates that the guidelines are mandatory rather than advisory.

Kiegue considers what sort of record would indicate that the defendant might have received a different, shorter sentence had the proper version of the guidelines been applied. Kiegue concludes that where the District Court sentences a defendant based upon where the sentence fell within the guideline range, for example, in the middle of the range, then it can be concluded that had the judge been using the correct range, he again would had chosen a sentence in the middle of the range. Thus, if the proper guideline range was a shorter term of months than the improperly used range, it can be concluded that the judge would have again chosen a sentence in the middle of the range which would had been a shorter sentence, and thus the defendant's substantial rights were violated.

This case is like Kiegue insofar as the sentence chosen was chosen because of its position in the guideline range (here at the beginning of the range).As in Kiegue the error in imposing

22

a sentence under the mistaken belief that the guidelines were mandatory should be held to be an error affecting substantial rights of the defendant.

In this respect, this case is also like those where some courts erroneously believed that they did not have discretion to make a downward departure from the guidelines.

Errors like these have, for 23 years, seriously affected the fairness, integrity, or public reputation of the judicial proceeding. This case meets the criteria because a very long sentence is involved in this case.

Petitioner has come before this Court by Writ of Audita Querela praying that this Court consider whether a shorter sentence is appropriate to deny that opportunity on this case could seriously undermine the fairness of the judicial proceeding. To deny allowance of consideration of a shorter sentence simply because of a timing factor in the sentencing date smacks on arbitrariness which is incompatible with the integrity of the judicial process, specially in a case like this one which deals with a sentence that amounts to 40 % of a man's life. While a sentence of five months might not arouse a sense of unfairness, sentences of 22 years are different.

Had this Court not believed that the guidelines were mandatory, it might have given the Petitioner a shorter sentence. See Williams v. United States, 503 U.S. 193, 112 S.Ct. 1112 (1992) holding that although the party challenging the sentence " bears the initial burden of showing that the District Court relied upon an invalid factor at sentencing, [that party]

23

does not have the additional burden of proving that the invalid factor was determinative in the sentencing decision." 503 U.S. at___, 112 S.Ct. at 1120. Rather the burden is on the party defending the sentence to persuade the court that the record as a whole indicates " that the error did not affect the District Court's selection of the sentence imposed. Id. Only if the Government fulfills its burden in showing harmless error may we decline to remand to the court. 962 F.2d. 1424.

It should be noted that a significantly long sentence was imposed and that this sentence was disparate to the sentence that would be imposed by a State court for the same offense.

The Court imposed extra punishment upon Petitioner for crimes and acts that were never submitted to a jury, and never proven beyond a reasonable doubt. "As a matter of simply justice," procedural safeguards designed to protect the accused should apply equally to each of his acts that the law has "singled out for punishment." Apprendi v. New Jersey, 530 U.S. 466, 467 (2000). The COurt imposed this punishment without affording the Petitioner the procedural protections our Constitution provides against the wrongful infliction of punishment, indictment, proof beyond a reasonable doubt, and trial by jury. The sentencing procedure used in this case violated Petitioner's constitutional rights, because the judge inflicted "punishment that the jury's verdict alone does not allow." Blakely v. Washington, 542 U.S. 266 (2004).

As this Court is aware, the Supreme Court determined that the mandatory Federal Sentencing Guidelines deprived a

24

defendant of both his right to trial by jury, and the right to have facts determined that would affect his maximum punishment by a jury beyoon a reasonable doubt. It is Petitioner's position that the reasonable doubt requirement of <u>Blakely</u> is substantive in that it created a risk that he was innocent of specific offense characteristics that increased his sentence under the binding guidelines. Thus, while this Court essentially found by the preponderance of the evidence standard certain no elements that doubled Petitioner's guideline sentence. This outcome was not certain under the reasonable doubt standard. Suffice to say, whatever findings this Court made beyond the fact found by the jury, subjected the Petitioner to grater punishment. There is obviously a material difference between the more likely than no standard and beyond a reasonable doubt, and this Court is in the best position to answer these concerns. It seems sufficient at this juncture that the reasonable doubt requirement of <u>Blakely</u> created a risk that the Petitioner received an aggravated setence under conduct that is not punishable under the binding guidelines.

The Sixth Amendment precludes a federal sentencing court from imposing a sentence that was "not solely based on 'facts reflected in the jury verdict or admitted by the defendant'" <u>Booker</u>,____,U.S. at____, 125 S.Ct.at 749 (quoting <u>Blakely</u>, ____, U.S. at____, 124 S.Ct. at 2537).

Just as previously explained, the Petitioner in this instant case was precluded from raising these issues at the time of his conviction, sentence, direct appeal and the filing of

his post-conviction motion under § 2255.

In United States v. Holt, 417 F.3d. 1172 (11th Cir. 2005), the Court quoting United States v. Valdez-Pacheco, 237 F.3d. 1077, 1079 (9th Cir. 2001), denied the defendant's petition for Audita Querela holding that: (1) writ of audita querela may not be granted when relief is cognizable on motion to vacate, set aside or correct judgment; (2) proper venue of relief for federal prisoner, in pursuing Blakely challenge to sentence imposed by district court based on judge-found facts, was motion to vacate, set aside or correct sentence; and (3), even liberally construing prisoner's petition as motion to vacate, set aside or correct sentence, district court lacked jurisdiction to consider this successive motion.

As previously aforementioned herein, these cases are distinguishable from Petitioner's case, because the defendants there, sought a Writ of Audita Querela based on claims that could have been raised in direct appeal or in earlier post conviction attacks. The basis for their attacks existed factually and legally prior to, or at the time the defendant was sentenced. Because the remedies were known and existed at the time of the prior attack, the courts viewed Valdez- Pacheco and Holt's petitions as a method of circumventing the restrictions on collateral attacks. Additionally as previously stated here, no case had suggested prior to the Booker holding that guidelines would remain valid, but that portions of the guidelines making them mandatory would be severed and would

**26**

continue as advisory.

Because Petitioner is attacking a judgment that was correct when rendered, but later became incorrect because circumstances that arose after the judgment was issued, the Audita Querela or Writ of Error, 28 U.S.C. § 1651 is the common law writ to attack it . See <u>Kessack v. United States</u>, appended to this instant motion holding:

> "Audita Querella literally the'complaint having been heard,' is a common law writ used to attack a judgment that was correct when rendered, but that later became incorrect because of circumstances that arose after the judgment was issued."

The defendant in <u>Kessack</u> had been sentenced to a term of imprisonment of 30 years on September 10, 1989. Nineteen years later the Court on January 18, 2008, concluded that the Writ of Audita Querela was available to Mr. Kessack, because <u>Booker</u> announced a new rule of constitutional law that was unforeseeablea at the time of his sentencing, appeal, and habeas petitions, thus distinguishing his case from <u>Vega-Pacheco</u>. The court declined to construe Mr. Kessack's Writ of Audita Querela as a motion under 28 U.S.C. § 2255 in light of <u>United States v. Morgan</u>, and therefore, the ban on second or successive habeas petition did not apply to Mr. Kessack. The Court additionally held that the retroactivity issue does not apply to a Writ of Audita Querela, because Teague applies only to habeas cases on collateral review. The Court did not address the retroactivity of <u>Booker</u> under the Fifth Amendment. Aditionally the Court in <u>Kessack</u> stated that as recently recognized by the United

27

States Supreme Court, "the sentencing judge has access to, and greater familiarity with the individual case and the individual defendant before him than the [Sentencing] Commission or the appeals court." Citing <u>All v. United States</u>, 128, S.Ct. 586, 597-98 169, L.Ed. 2d. 445 (December 10, 2007)(quoting <u>Rita v. United States</u>, 127 S.Ct. 2456, 2469, 168 L.Ed. 2d. 203 (June 21, 2007). The Court stated that despite the passage of 18 years since the trial and sentencing of the defendant, the court vividly remembered the facts and circuumstances of the case and believed that a great injustice ocurred as result of the defendant's 30 years sentence, which he had to impose pursuant to the then mandatory Federal Sentencing Guidelines now declared unconstitutional. The COurt granted the Petition for Writ of Audita Querela and resentenced the defendant on March 03, 2008, to time already served. See copy of the court's sentencing order attached to this instant motion.

This case is identical to <u>Kessack</u>. In this case the Petitioner was convicted and sentence in 2000, to a term of imprisonment of 262 months or 22 years, based on facts that were neither charged on his indictment or admitted by him. In fact, he objected to the quantities of drugs attributed to him and his sentence was based on facts, elements and aggravating conduct on the preponderance of the evidence standard instead of the beyond the reasonable doubt standard and imposed extra punishment upon Petitioner which now violates procedural safeguards designed to protect the accused.

28

Mr.Rivera Lebron, is a 45 year old male who has been incarcerated on this instant offense for eight years. Prior to the instant offense he committed a series of other crimes, due to his heavy addiction to drugs. He was a hard core heroin addict for over 18 years. His prior acts dated from 1988 to 1994, 6 years before his first federal offense. Also, during pre-trial detention for the federal offenses, Mr. Rivera-Lebron's 6 months daughter was murdered by his common law wife's lover and co-conspirator Damaris Rivera.

During the 8 years that he has been incarcerated, Mr. Rivera-Lebron following the advise and recommendations    of the Honorable Jay A. Garcia has been drug-free,  has mantained clear conduct and stayed away from the wrong crowd. He completed and ootained his GED diploma on April 22, 2003, completed the Court's recommendation to participate in Drug Education on December 26, 2001, and has participated in other programs in the Federal Bureau of Prisons. He  has not been able to participate in the 500 hours Residential Drug Abuse Program  which he so desires, due to the remaining balance of his sentence  since this program  is only offered  by the BOP to inmates who have less than 36 months to serve on their sentences, therefore, preventing  the  Petitioner  for  participating  in  the  most important part of his rehabilitation which is the Drug Program recommended by this Court and which was the sole cause for the Petitioner's criminal behavior.

This Honorable Court by correcting Mr. Rivera-Lebron's unconstitutional sentence under the then mandatory Federal

Sentencing Guidelines is correcting a disparate sentence that this Court had no choice but to impose under the constrains of these unconstitutional guidelines. As this Court expressed at Petitioner's change of plea hearing, the Court was limited as to the constrains imposed by the Federal Sentencing Guidelines.

This Court by re-sentencing Mr. Rivera-Lebron under the now advisory sentencing guidelines to a lesser term of incarceration will allow Mr. Rivera-Lebron to be transferred to an Institution where the Residential Drug Abuse Program is being offered and will expedite his rehabilitative programs. Additionally by reducing his term of imprisonment to 180 months or 15 years under the now advisory guidelines will meet the deterrence criteria of 18 U.S.C. § 3553 and is more than enough punishment considering the circumstances that this Court is aware of in relation to Petitioner's past heroin drug abuse.

### CONCLUSION

**FOR ALL OF THE AFOREMENTIONED,** Petitioner ESTEBAN RIVERA-LEBRON, respectfully moves this Honorable Court to grant this Petition for Writ of Error or Audita Querela, pursuant to 28 U.S.C. § 1651, reopen the criminal case and resentence Mr. Rivera-Lebron pursuant to United States v. Booker, and under the now advisory Federal Sentencing Guidelines, and to further consider Mr. Rivera-Lebron's rehabilitative efforts.

This Court is in the position to reduce Mr. Rivera-Lebron's sentence as the Court did in Kessack and give Mr. Rivera-Lebron under equal application of the law the same considerations, as this case is identical to Kessack in all

30

respects.

**WHEREAS,** for all stated herein, Petitioner ESTEBAN RIVERA-LEBRON prays that this Honorable Court grant this Petition for Writ of Error or Audita Querela and/or any other relief this Court deems proper.

**September 05, 2008**
**Miami, Florida.**

RESPECTFULLY SUBMITTED.

ESTEBAN RIVERA-LEBRON
REG. No. 20343-069
FEDERAL     CORRECTIONAL     INST.
MIAMI,LOW, UNIT B.
P.O. BOX 779800
MIAMI, FLORIDA, 33177

## VERIFICATION

I Esteban Rivera-Lebron, hereby certify, that the foregoing facts and law are tue and correct done under penalties of perjury.

ESTEBAN RIVERA-LEBRON
REG. No. 20343-069
FEDERAL     CORRECTIONAL     INST.
MIAMI,LOW, UNIT B.
P.O. BOX 779800
MIAMI, FLORIDA, 33177

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY,** that on this <u>05th</u>, of September, 2008,

a true and correct copy of the foregoing was mailed first class,

postage prepaid, and placed in the Institution's Mail Box to:

Ms Lisa Snell-Rivera Esquire
Assistant United States Attorney
Ms. Aixa Maldonado-Quinones Esquire
Assistant United States Attorney
United States Attorney's Office
Federal Office Building Chardon Tower
Room or Suite 1201
350 Carlos Chardon Avenue
San Juan, Puerto Rico, 00918

ÉSTEBAN RIVERA-LEBRON
REG. No. 20343-069
FEDERAL    CORRECTIONAL    INST.
MIAMI,LOW, UNIT B.
P.O. BOX 779800
MIAMI, FLORIDA, 33177